# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, CAMPANELLA, and HERRING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class THOMAS A. CHESTNUT**
**United States Army, Appellant**

ARMY 20140547

Headquarters, 1st Cavalry Division
Gregory A. Gross, Military Judge
Lieutenant Colonel James D. Levine, II, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Christopher D. Coleman, JA; Captain Payum Doroodian, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

14 December 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

In this case we find, after a fresh and impartial look at the evidence, and taking into account the fact that the trial court saw and heard the witnesses, that the evidence supporting appellant's conviction for sexual assault is factually insufficient. Accordingly, we overturn and vacate the judgment of the trial court.

A panel of military officers sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012)

[hereinafter UCMJ].[1]  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

We review this case under Article 66, UCMJ.  Appellant asserts three assignments of error.  Because of the relief this court provides based on factual insufficiency, we need not address appellant's additional assertions of dilatory post-trial processing or the unreasonable multiplication of charges.[2]

## BACKGROUND

### A.  *Specialist GT's Version of Events*

Specialist (SPC) GT suffered from insomnia and was prescribed Ambien to aid in the inducement of sleep.  On the night in question, SPC GT ingested his prescribed dosage of Ambien before the final evening unit formation.[3]

Shortly after the formation, SPC GT walked from his barracks room to appellant's barracks room down the hall to socialize with appellant as he had done on previous occasions.  Specialist GT knocked on appellant's door and was let inside by Private First Class (PFC) JC, appellant's roommate.  Appellant was also present in the room.

Specialist GT testified he spoke with PFC JC for somewhere between fifteen and thirty minutes about a video game PFC JC was playing.  Specialist GT remembered that during the conversation with PFC JC he began to get sleepy while he was laying down on a pile of clean clothes on the floor.  Specialist GT admitted on cross-examination that he could not be certain if he *actually* fell asleep at this

---

[1] The panel also found appellant not guilty of violating Article 128, UCMJ, to wit: grabbing his roommate's buttocks with his hand on divers occasions.  The government charged Specifications 1 and 2 of Charge I in the alternative. Specification 1 alleges appellant committed a sexual act upon SPC GT while he was incapable of consenting due to impairment by a drug and that the condition reasonably should have been known to appellant.  Specification 2 alleges appellant committed a sexual act upon SPC GT when appellant should have reasonably known SPC GT was asleep or otherwise unaware the sexual act was occurring.

[2] Additionally, we have considered the matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find no need to comment further upon those matters.

[3] Specialist GT testified that Ambien caused him to experience memory loss before the alleged incident.

point, or just *believes* he fell asleep—because he simply could not remember what occurred subsequently.

The next thing SPC GT recalled was being on his back in a dark place with a light shining through a doorway, with someone touching him sexually and "poking and prodding" his buttocks with what felt like a finger. He testified that eventually he was penetrated with something that felt like a penis. He could not be certain, however, what or who was actually penetrating him. The next thing SPC GT remembers is awaking up the next morning in his barracks room in his own bed with no recollection of how he got there. He testified that when he awakened, he was in no pain and had no unusual bruising on his body, but felt strange—like something happened that he couldn't quite remember.

## B. The Roommate's Version of Events

Private First Class JC testified that SPC GT had stumbled into the barracks room, tripped, fell on the floor, and just laid there. According to PFC JC, appellant then moved SPC GT to appellant's bed. In appellant's bed, appellant and SPC GT engaged in kissing and touching under the covers. Private First Class JC did not intervene or attempt to stop the activity.

At some point, PFC JC went to take a shower, leaving appellant and SPC GT on appellant's bed. Private First Class JC testified that while he was in the bathroom, appellant asked him for a condom—and he told appellant where he kept them.

After showering, PFC JC left the room and went to another soldier's room. Private First Class JC agreed on cross-examination that he left to be "polite" and because he found two men kissing "gross" and "unpleasant." While in the other soldier's room, he did not indicate to them that SPC GT was asleep or impaired. When asked why he did not tell them, he stated "he hadn't put two and two together on that yet."

Private First Class JC testified that the next day he spoke to SPC GT about the events of the previous evening and based *on that conversation*, PFC JC became concerned that SPC GT was "not right" the night before.

Private First Class JC then confronted appellant. Private First Class JC told appellant that SPC GT "was not completely alert" or "aware" of what was going on the previous night, alluding to the fact that SPC GT did not remember the specifics of the evening because he was on Ambien. Appellant confirmed that he had sex with SPC GT that evening and SPC GT was "into the sex." When PFC JC asserted SPC GT was "not right," appellant responded "no, he enjoyed it, he was fine."

3

On cross-examination, PFC JC agreed appellant seemed surprised at the assertion that SPC GT was not alert or unaware and persisted in countering that assertion.

### C.  *Expert Testimony Regarding Effect of Ambien*

During the defense case, expert witness, Doctor Laquisha Cartright, a clinical pharmacist was called to testify.  She indicated that a side effect of Ambien use is "sleep related activity" or performing complex behaviors while on the drug and later having no recollection of having performed such tasks.  Sleep related activities may include such behaviors as driving a car, cooking a meal, eating, having sex, and making phone calls, to name a few.  She also testified that if you're not familiar with a person's normal demeanor and you witness such complex behaviors, you may not know the person was on Ambien.

Specialist GT admitted at trial that since the night in question, his doctor had cut his Ambien dosage in half to lessen the effects of the drug after he reported difficulty waking up and memory loss while taking Ambien.  Specialist GT also testified that the experience of memory loss on the night in question was similar to other memory loss experiences he had while on Ambien.

### D.  *Reporting Triggered by PFC JC's Misconduct*

The aforementioned incident was reported to authorities seven months later by PFC JC.  He had changed duty locations and had gotten into trouble for violating a barracks policy involving alcohol.  When confronted by his first sergeant for his misconduct, PFC JC alleged he witnessed something inappropriate at AIT and further alleged appellant touched him inappropriately.[4]

## LAW AND ANALYSIS

Article 66(c), UCMJ, provides:

> In each case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority.  It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.  In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine

---

[4] The panel found appellant not guilty of the inappropriate touching of PFC JC.

> controverted questions of fact, recognizing that the trial
> court saw and heard the witnesses.

Accordingly, this court has an independent duty to review the record and determine whether it is correct in law and fact. UCMJ art. 66(c).

Appellant asserts that the government failed to prove beyond a reasonable doubt both that appellant: 1) should have reasonably known SPC GT was incapable of consenting to the sexual act due to impairment by a drug, and 2) reasonably should have known SPC GT was asleep or otherwise unaware the acts were occurring. After thoroughly reviewing the evidence in this case, we agree.

We are lead to this conclusion for several reasons. Based on SPC GT's testimony, when he arrived at appellant's room, he was able to carry on a conversation with PFC JC for fifteen to thirty minutes after his arrival. His testimony stands in stark contrast to PFC JC's story of SPC GT stumbling, tripping, and just lying on the floor upon his entry in the room. Private First Class JC did not behave in such a way as to indicate concern or distress for SPC GT at the time the events were unfolding. Private First Class JC did not hesitate to provide appellant a condom when he asked for one—seeming to indicate a lack of concern that SPC GT was impaired or asleep. It was only after speaking with SPC GT the next day that PFC JC became concerned that SPC GT was not in the "right" state of mind the night prior. In fact, PFC JC's testimony is that it wasn't until the next day, that "he put two and two together."

Also significant, according to PFC JC, when he confronted appellant with the allegation that he had sexually assaulted SPC GT, he admitted having sex with SPC GT but showed surprise and disbelief at the suggestion that SPC GT was not a willing participant in the sexual activity that occurred the evening before.

We also found the expert testimony in this case regarding memory loss and the performance of complex activities after taking Ambien highly probative and persuasive under the facts of this case. Doctor Cartwright's testimony was illuminating regarding how a person on Ambien may appear to have a normal demeanor to an unwitting onlooker observing them perform complex activities. We also found it relevant that SPC GT testified to having memory loss while on Ambien, that this episode was similar to others, and that he had to have his Ambien prescription reduced because of side effects associated with taking the drug.

After taking into account all the evidence presented in this case, we find the evidence does not prove appellant's guilt beyond a reasonable doubt.[5]

## CONCLUSION

In view of the foregoing, the findings of guilty and the sentence are set aside. The Charge is DISMISSED. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings and sentence set aside by our decision, are ordered restored. See UCMJ arts. 58b(c) and 75(a).

Senior Judge MULLIGAN and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] In arriving at our decision herein, this court did not take into account the military trial judge's recommendation to the convening authority to disapprove the findings of the court-martial and overturn the verdict.

In conducting our analysis we are required "to evaluate not only the sufficiency of the evidence but also its weight." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Article 66(c), UCMJ states that "we should recognize that the trial court saw and heard the witnesses." This court followed the mandates of Article 66(c), UCMJ, and our superior court in reaching our decision. Our ruling overturning findings of guilt on factual sufficiency grounds was not undertaken lightly and decreed only after lengthy consideration of the law and with the utmost respect for the role of the court-martial panel in our system of justice.